Dana E. NEWELL, Appellant,

v.

**STATE FARM FIRE AND CASUALTY,** Respondent.

No. WD 48665.

Missouri Court of Appeals, Western District.

April 11, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied July 25, 1995.

James M. Roswold, Kansas City, for appellant.

Daniel E. Hamann, Kansas City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Dana E. Newell appeals from a grant of summary judgment in favor of State Farm Fire & Casualty Company. Mr. Newell brought an action against the insurance company for breach of contract, vexatious refusal to pay, statutory penalties, and attorney's fees in connection with State Farm's refusal

to provide him with a defense to a lawsuit brought by Lyle Rice in federal court. State Farm filed a counterclaim for declaratory judgment seeking a determination that there was no coverage requiring State Farm to defend Mr. Newell in the federal action. The trial court ordered summary judgment for State Farm, finding no coverage. Mr. Newell raises a single point on appeal. He contends that the trial court erred in finding, as a matter of law, that he was unable to prove the existence of an accident and, therefore, an occurrence, as required by the insuring clause in State Farm's policy of insurance.

The judgment of the trial court is reversed.

Dana E. Newell's daughter, Debra Rice, was married to Lyle Rice until a decree of dissolution of their marriage was entered in July of 1988. Allegedly concerned that Mr. Rice was exerting undue influence over the Rices' two minor children, Ms. Rice made an appointment to meet with an attorney in September of 1988. Mr. Newell accompanied Ms. Rice to the appointment.

During that meeting the attorney suggested that Ms. Rice and Mr. Newell obtain a telephone tape-recording device and connect it to a bedroom telephone so that Ms. Rice could record telephone conversations between herself and Mr. Rice and preserve them for future reference. Ms. Rice and Mr. Newell subsequently purchased a tape-recording device from Radio Shack and attempted, unsuccessfully, to install it on Ms. Rice's bedroom telephone. Ms. Rice later obtained the assistance of a neighbor to complete the installation of the tape recorder.

According to the affidavit of Mr. Newell, the Rices' children were given explicit instructions not to use the telephone in Ms. Rice's bedroom when talking to Mr. Rice. Despite this directive, the children did use the bedroom telephone when speaking with their father and, consequently, their conversations were recorded. These tapes allegedly confirmed Ms. Rice's suspicions that Mr. Rice was "saying some improper things to the children ... that might damage [Ms. Rice's] relationship with the children in the future." In the fall of 1988, Ms. Rice played some of the tapes for Mr. Newell, who agreed with Ms. Rice's assessment of their content.

In December of 1988, Mr. Rice filed for a modification of the custody provisions of the decree dissolving his marriage with Ms. Rice. On the advice of her attorney, Ms. Rice ceased taping Mr. Rice's telephone calls in January of 1989.

At some point in time, Mr. Newell furnished tapes containing telephone conversations between Mr. Rice and the children to Mr. Rice's brother and encouraged him to listen to the tapes and play them for Mr. Rice's sister. Mr. Newell testified by affidavit that he provided these tapes "upon request of [Mr. Rice's brother] so that [he] and [Mr. Rice's sister] would know the true story of Lyle M. (L.M.) Rice's actions, and for the purpose of helping my daughter protect her relationship with her children." Mr. Newell attested that his actions were not motivated by or undertaken with any intention or expectation that Mr. Rice would suffer bodily injury of any kind as a result. Mr. Newell also stated that his actions were not motivated by or undertaken with any malice or hatred toward Mr. Rice but that he acted "solely out of a concern for [his] daughter and her children's welfare." He swore that he had no knowledge that his actions were wrongful or unlawful.

On August 25, 1989, Mr. Rice filed a lawsuit against Ms. Rice and Mr. Newell in the United States District Court for the Western District of Missouri. In Count III of his complaint, Mr. Rice alleged that Mr. Newell violated 18 U.S.C. § 2510 by installing the tape-recording device and by giving copies of the tape recordings of the conversations of Mr. Rice and his children to Mr. Rice's brother. In Count IV of the complaint, Mr. Rice contended that by performing the acts alleged in Count III, Mr. Newell committed the tort of invasion of privacy. Mr. Rice further alleged in his complaint that all of Mr. Newell's actions were intentional, willful, wanton, and malicious, and were done in an effort to invade Mr. Rice's privacy and to damage him. Mr. Rice sought damages for mental, emotional, and psychological upset

and duress; embarrassment, humiliation, mental duress and grief; and attorney fees.

At all relevant times, there was in full force and effect a State Farm "Homeowner's Extra" policy insuring Mr. Newell. Under its policy of insurance, State Farm agreed to furnish certain liability coverage to Mr. Newell. The policy specifically provided:

*COVERAGE L—PERSONAL LIABILITY*

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, we will:

\* \* \* \* \* \*

(2) Provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals our limits of liability.

The policy defined "occurrence" as follows:

"[O]ccurrence," when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

 a. *bodily injury*; or

 b. *property damage*

during its policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence*.

The policy also stated:

"Coverage L and Coverage M do not apply to:

 a. *bodily injury* or *property damage:*

 (1) which is either expected or intended by an *insured;* or

 (2) to any person or property which is the result of willful and malicious acts of an *insured*. . . .

Mr. Newell notified State Farm of the lawsuit and requested that State Farm provide a defense pursuant to the terms of the insurance policy. State Farm initially agreed to provide Mr. Newell with a defense in connection with the lawsuit. In December of 1989, however, State Farm notified Mr. Newell that it would no longer continue to provide him with a defense and denied coverage under the insurance policy.

The federal court ruled in September of 1990 that Mr. Newell acted in good faith and granted his motion for summary judgment based upon the "good faith" exception to the Federal Wiretapping Act. That exception provides that a good faith belief that the Act permits the conduct complained of is a complete defense to any civil or criminal action brought under the Act. Mr. Rice's lawsuit was subsequently dismissed.

After a written request from Mr. Newell in December of 1990 to reconsider the denial of coverage, State Farm reaffirmed its denial of coverage in February of 1991. On December 17, 1991, Mr. Newell filed the instant lawsuit in connection with State Farm's refusal to provide Mr. Newell a defense to the lawsuit instigated by Mr. Rice. On October 15, 1993, the Circuit Court of Jackson County granted State Farm's Motion for Summary Judgment on the grounds that no accident within the meaning of the insuring clause had taken place and that State Farm did not have to provide Mr. Newell a defense.

█ The standard for appellate review of a summary judgment is *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those used by the trial court when determining the propriety of sustaining the motion initially. *Id.* A defending party is entitled to summary judgment if the party proves:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381. Summary judgment will be upheld on appeal if the reviewing court deter-

mines that the movant had a right to judgment as a matter of law and that no genuine issue of material fact existed. *Manor Square v. Heartthrob*, 854 S.W.2d 38, 41 (Mo. App.1993). When considering an appeal from summary judgment the court will review the record in the light most favorable to the party against whom judgment is entered. *ITT*, 854 S.W.2d at 376.

In his sole point on appeal, Mr. Newell contends that the trial court erroneously declared the law in ruling that as a matter of law he was unable to prove the existence of an accident and, therefore, an occurrence, as required by the insuring clause in question. Mr. Newell asserts that there was a question of material fact as to whether an accident occurred or, to be more specific, whether Mr. Newell, although his acts were intentional, meant to inflict the harm which resulted.

In order to recover under the State Farm policy, Mr. Newell has the burden of proving that his claim is within the coverage afforded by the insurance policy. *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo. App.1993). State Farm was entitled to summary judgment denying coverage only if State Farm negated an element of Mr. Newell's claim or showed that Mr. Newell lacked evidence of any element of his claim. State Farm's request for summary judgment was based on its claim that there was no occurrence or accident under the terms of the policy.[1]

In determining whether there was an accident as required by the insuring clause, precedent in opinions issued by the Missouri Supreme Court and this court must be followed. *In Interest of M.V.*, 775 S.W.2d 262, 265 (Mo.App.1989). The first recorded decision of a Missouri appellate court considering the meaning of the term "accident" in the context of an insurance policy was *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969). The Springfield Court of Appeals held "neither policy nor principle excludes from the category of damages 'caused by accident' for which coverage is afforded by a liability insurance policy, even damage which might be, for oth-

er purposes, regarded as *constructively* intentional or damage resulting from wanton and reckless conduct." *Id.* at 507. The court distinguished between the act and result, finding a distinct difference between intended acts and intended results. *Id.* " 'Injuries [and damages] are accidental or the opposite, *for the purpose of indemnity*, according to the quality of the *results* rather than the quality of the *causes.*' That [the insured's] acts were *intended* did not exclude the *unintended* result from coverage under the policy in suit." *Id.* (quoting *Messersmith v. American Fidelity Co.*, 232 N.Y. 161, 133 N.E. 432, 433 (1921)).

An insuring clause "occurrence provision" identical to the policy provision in the case at bar was construed in *D.T.S.*, 867 S.W.2d at 643. The court found:

In order to establish coverage under the policy, [the insured] had the burden of proving that bodily injury resulted from an occurrence. "Occurrence" is defined as an accident. This burden could be satisfied by proof that [the insured] did not consciously or deliberately intend to act as she did or that she did not intend to inflict harm upon [the injured party].

*Id.* at 644. Generally, it is the subjective intent of the insured to cause harm that is considered. *Id.* at 645.

The principle of *White* has been followed in other cases. An insured in *Fidelity and Cas. Co. of New York v. Wrather*, 652 S.W.2d 245, 248 (Mo.App.1983), used his vehicle to pull a burning tire through a field of wheat stubble for the purpose of igniting the field. The burning of the field created such dense, dark smoke that visibility was impaired on an adjacent highway, causing a motor vehicle accident. When the insured was sued by persons injured in the collision, State Farm denied coverage claiming there was no accident because the insured intentionally set the fire and drove the vehicle. In affirming the finding of coverage, the appellate court held that "the term 'caused by accident,' as used in policies of liability insurance, is satisfied where the insured did not intend that dam-

---

1. State Farm did not assert in its motion for summary judgment or on appeal that the injuries pled by Mr. Rice were not "bodily injuries" with-

in the terms of the policy, so such issue is not addressed.

age result from his act although the act itself was intentional and did so result." *Id.* at 249. *See also N.W. Electric Power Coop., Inc. v. American M. Ins. Co.,* 451 S.W.2d 356 (Mo.App.1969). The Eighth Circuit applied Missouri law in ruling that the insurance company had a duty to defend a suit against an insured for injuries which resulted from the intentional firing of an employee because the insured did not expect or intend that the act of termination would cause the physical and emotional damages the employee suffered as a result of the termination. *Interco Inc. v. Mission Ins. Co.,* 808 F.2d 682, 686 (8th Cir.1987).

Additionally, the Missouri Supreme Court has sanctioned the distinction between intended acts and intended results, although in the context of an "intend or expect" exclusionary clause of an insurance policy. When considering what was "expected or intended by any insured" in *American Family Mut. Ins. v. Pacchetti,* 808 S.W.2d 369, 371–72 (Mo. banc 1991), the Supreme Court affirmed a judgment finding liability coverage because a fatal injury suffered by a 16–year old boy, when he injected and overdosed on cocaine supplied by the insured, was not expected or intended within the meaning of the exclusionary clause. *Id.* The court found that what the insured intended or expected was a question of fact, and upheld the trial court's finding that the evidence did not establish that the insured intended or expected the resulting injury to occur.

This court has applied the rule of *Pacchetti* and found that coverage is avoided only if the insured intended the acts causing the injury *and* injury was intended or expected from the acts. *American Family Mut. Ins. Co. v. Lacy,* 825 S.W.2d 306, 314 (Mo.App.1991). *See also Easley v. American Family Mut. Ins. Co.,* 847 S.W.2d 811, 812–13 (Mo.App. banc 1992) (an insurer has no liability for intentional acts, but there must be evidence that the insured not only acted intentionally, but also intended that his acts injure—not benefit—the victim); *Economy Fire and Cas. Co. v. Haste,* 824 S.W.2d 41, 45 (Mo. App.1991) (the insured must expect or intend the result which occurred).

■ In the case at bar, it is undisputed that Mr. Newell intentionally provided the tapes to Mr. Rice's brother and encouraged the brother to play them. This fact alone is insufficient to prove that an accident did not occur. For State Farm to be entitled to summary judgment, it must also be undisputed that Mr. Newell intended to injure Mr. Rice.

In response to State Farm's motion for summary judgment, Mr. Newell filed an affidavit stating that he had no intention or expectation that his actions might cause harm to Mr. Rice, but rather his actions were motivated solely out of concern for his daughter and her children's welfare. Mr. Newell also swore that his activities and assistance to his daughter were "not motivated by or undertaken with any malice or hatred toward Lyle Rice...." Nevertheless, State Farm argues that it should be found, as a matter of law, that Mr. Newell intended to injure Mr. Rice because if "the natural and probable consequences" of an act are to produce harm, it can be inferred that the actor intended to harm. *Federated Mut. Ins. v. Madden Oil Co.,* 734 S.W.2d 258, 260 (Mo. App.1987) (quoting *Travelers Ins. Co. v. Cole,* 631 S.W.2d 661, 664 (Mo.App.1982)). State Farm asserts that since Ms. Rice and Mr. Rice were adversaries regarding custody of the children, any act that benefitted Ms. Rice would harm Mr. Rice. It could be argued, however, that there are natural and probable consequences of Mr. Newell's actions other than harm to Mr. Rice. For example, defusing a custody battle would be in the best interests of Mr. Rice's children and, therefore, would benefit Mr. Rice.

There is sufficient evidence regarding whether Mr. Newell intended to injure Mr. Rice to create a genuine dispute of a material fact, precluding summary judgment. Accordingly, the summary judgment is reversed and the cause remanded.

All concur.