**Shawn EASLEY, Plaintiff–Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellant,**

v.

**Douglas & Sandra WILLMENO, Defendants–Respondents.**

**No. WD 45688.**

Missouri Court of Appeals, Western District.

Dec. 8, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1992.

Application to Transfer Denied March 23, 1993.

Erwin L. Milne, Jefferson City, for defendant-appellant.

Fairfax Jones, St. Louis, for plaintiff-respondent.

Before LOWENSTEIN, C.J., and SHANGLER, TURNAGE, KENNEDY, BERREY, FENNER, ULRICH, BRECKENRIDGE, HANNA, SPINDEN and SMART, JJ.

SPINDEN, Judge.

Shawn Easley was seriously hurt in a school yard fight on January 24, 1984. An argument between Easley and Douglas Willmeno during high school basketball practice ignited the fight. After practice, Willmeno waited outside the school for Easley. As Easley left the school building, Willmeno walked up to him and hit him in the chin with his fist. Easley fell backward, bounced off a wall, and his head went through a window. He was cut seriously; his ear was nearly severed from his head.

Easley sued Willmeno, and the court entered judgment for Easley for $82,088.14.[1] Now, in this subsequent action, Easley seeks to recover the judgment from American Family Mutual Insurance Company pursuant to § 379.200, RSMo 1986.[2] American Family had issued a mobile home owner's insurance policy to Willmeno's mother. American Family impleaded the insured, Sandra Willmeno, and her son Douglas into the action as third-party defendants.

Easley and American Family filed cross motions for summary judgment. The trial court declared that the American Family policy covered the injuries. American Family appeals. We reverse.

American Family's policy excluded coverage of "bodily injury or property damage ... which is expected or intended by any insured[.]" Indeed, Missouri courts have consistently held that an insured's intentional infliction of damage cannot be deemed an accident and cannot be covered by liability insurance. Permitting an insured to insure himself against his wanton, reckless or willful acts would enable him to insure himself from bearing the consequences of his intentional acts and would, therefore, be contrary to public policy. *Keeler v. Farmers and Merchants Insurance Company*, 724 S.W.2d 307, 309 (Mo. App.1987); *Fidelity and Casualty Company of New York v. Wrather*, 652 S.W.2d 245 (Mo.App.1983); and *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969).

The trial court found that "... [Willmeno] did not intend to knock [Easley] toward the glass window or through it or to cause the severe injuries that [Easley] sus-

tained." The trial court concluded, on the basis of *American Family Mutual Insurance Company v. Pacchetti*, 808 S.W.2d 369 (Mo. banc 1991), that American Family had failed to establish that the policy excluded coverage of Easley's injuries because Willmeno had not intended to knock Easley through the window, but only wanted to bloody his nose or blacken his eye. The trial court concluded from its reading of *Pacchetti* that an insurer can escape liability for an intentional act only when the insured intended the specific injury which resulted from the act.

In *Pacchetti*, the Supreme Court considered an exclusionary clause identical to the one in this case. At issue in that case was the death of a youth who had died shortly after the insured had given him cocaine. The court held that the policy did not exclude coverage and that the insurer was liable. The court reasoned:

> The insurer ... does not automatically bring the exclusion into play simply by showing that cocaine is harmful,[3] or that the insured's acts in providing it ... were intentional. Many intentional acts are within the coverage of liability insurance policies, even with this standard exclusion. *It must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts.*

*Id.* at 371 (emphasis added).

We believe the trial court read *Pacchetti* too narrowly. We read it as instructing that an insurer can escape liability for intentional acts when it establishes not only that the insured acted intentionally, but

---

**1.** This was in Case No. CV5–85–32 in the Circuit Court of Callaway County.

**2.** That statute provides, "Upon the recovery of a final judgment against any person ... by any person ... for loss or damage on account of bodily injury ... if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date

when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

**3.** This phrase necessarily excludes the contention urged by American Family that reasonably foreseeable results be included in what is "expected." Moreover, the court made clear that the intent was to be measured subjectively: "It remains for the insurer to show that this *particular* insured expected or intended the result which occurred." *Pacchetti*, 808 S.W.2d at 371 (emphasis added).

that the insured intended his acts to injure—not benefit—the victim. The insurer must establish that the insured acted volitionally and with a motive to harm or injure. The *Pacchetti* court was not requiring a showing that the insured intended the specific injury which resulted.

The trial court's contrary interpretation resulted from its focusing on a somewhat confusing passage in *Pacchetti* where the court discussed whether the insured intended to harm the victim:

> It remains for the insurer to show that this particular insured expected or intended the result which occurred. The record does not compel a finding that he did. It is just as likely that [the insured], in his perverted way, might have thought that [the victim] would derive some transitory pleasure or benefit from what apparently would be his initial experience with cocaine.

808 S.W.2d at 371. The trial court concluded that "the result" meant that an insurer had to establish that the insured intended the precise results which occurred before the policy's exclusionary clause relieved it of liability.

"The result" in *Pacchetti* was not a reference to death, to the exclusion of all other results. The issue was not whether the insured intended to kill the victim; it was whether he intended to benefit or to harm the victim. The result would have been the same in *Pacchetti* if the victim had not died but had suffered severe brain damage. Note the key sentence in the paragraph: "It is just as likely that [the insured], in his perverted way, might have thought that [the victim] would derive some transitory pleasure or benefit from what apparently would be his initial experience with cocaine."

Easley argues that the trial court's interpretation of *Pacchetti* was consistent with two of this court's cases, *American Family Insurance Company v. Lacy*, 825 S.W.2d 306 (Mo.App.1991), and *Economy Fire and Casualty Company v. Haste*, 824 S.W.2d 41 (Mo.App.1991). The *Lacy* decision does not aid Easley for it reaches the same conclusion we reach in this case. To the extent that *Haste* contains dicta subject to an interpretation that an insured must have intended the precise result which occurred before an exclusionary clause will relieve the insurer of liability, we clarify in this case that this was not the intent of that language. In any case, the result in *Haste* is consistent with this decision.

In *Lacy*, this court stated:

> The substantive law identified *two* material facts as essential to the proof of an action by an insurer for a declaratory judgment that the acts that caused injury to another were intentional and so excluded from the liability coverage. There must be issuable proof "not only that the insured intended the *acts* causing the injury, but also that *injury* was intended or expected from these acts."

*Id.* at 314 (emphasis in original). The *Lacy* court concluded in the final analysis "that the evidentiary materials before the court on the motion for summary judgment do not raise an issue of material fact that [the insured] ... acted with intention ... to injure anyone." *Id.* at 315.

Easley points to dicta in the *Haste* decision which supports his contention that the insurer must establish that the insured intended the precise results which occurred, but the court's conclusion in *Haste* is consistent with this decision. At issue in *Haste* was a declaratory judgment action involving underlying wrongful death actions. The court made a distinction concerning the kinds of injuries at issue: "[t]hose relating to the injuries to the victims prior to death and those suffered by the plaintiffs by reason of the deaths of the victims." *Id.* at 45.

Concerning the injuries inflicted prior to death, the *Haste* court concluded:

> [T]he record establishes, without genuine issue of material fact, that [the insured] both expected and intended *to harm* the victims by torturing them with physical, sexual and psychological abuse. Any damages otherwise recoverable against [the insured] for the intentional injuries inflicted on the victims prior to their death are excluded under [the insurer's] insurance coverage regardless of wheth-

er the claim is for injuries under the wrongful death actions or the claims of the estates of [three of the victims] for injuries from various of [the insured's] abusive actions that did not lead to death.

*Id.* (emphasis added). This is consistent with our conclusions in this case.

As to the deaths, the *Haste* court held that the trial court erroneously concluded that because the insured had pleaded guilty to second degree murder, there was no genuine issue of material fact whether he had acted to harm the victims. The court concluded that the trial court erred "by granting summary judgment in favor of [the insurer] on damages occasioned by the deaths of [the victims] because the record does not show, without genuine issue of material fact, that [the insured] expected or intended the result which occurred, i.e. the death of these individuals." *Id.* at 46. That was because the trial court had relied only on the insured's guilty plea to second degree murder charges in granting summary judgment, leaving a material issue of fact as to what the insured intended.

We conclude that Easley's injuries were not covered by Willmeno's policy. Willmeno acted willfully and deliberately in striking Easley in the face. He wanted to hurt Easley. That he wanted to limit the injury to a bloody nose or blackened eye is of no consequence; all that is required is that he intended to injure Easley. Because Willmeno acted volitionally and with an intent to injure, American Family was not liable for Willmeno's conduct. It was excluded both by the policy's exclusionary clause and by public policy which prohibits an insured from insuring against the consequence of his intentional acts. Hence, we reverse the trial court's entry of summary judgment in favor of Easley and enter judgment for American Family.

All concur.