**STATE FARM FIRE & CASUALTY CO., Plaintiff/Respondent,**

v.

**D.T.S., Jr., D.T.S., Sr., E.A.S., and L.K., Defendants/Appellants.**

**No. 62751.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 23, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 1993.

Application to Transfer Denied
Jan. 25, 1994.

Robert F. Summers, Andrea L. Weiss, Leonard J. Frankel, St. Louis, for defendants, appellants.

Sam P. Rynearson, Martin J. Buckley, St. Louis, for plaintiff, respondent.

CARL R. GAERTNER, Judge.

Defendants, D.T.S., Jr., D.T.S., Sr., E.A.S., and L.K., appeal from a declaratory judgment in favor of the plaintiff, State Farm Fire & Casualty Company. The trial court ruled that L.K.'s homeowners insurance policy, issued by State Farm, did not cover L.K.'s liability to D.T.S., Jr., or his parents. We affirm.

L.K. was a fifth grade teacher in the Parkway School District during the 1987/1988 school year. D.T.S., Jr., was one of her students through the course of that year. During the summer after the school year ended, D.T.S., Jr., frequently telephoned L.K. At first, these conversations centered around D.T.S., Jr.'s family problems but then became sexual in nature. In August of 1988, L.K. brought D.T.S., Jr., to her home while both her children and her husband were away. While in the home, D.T.S., Jr., and L.K. kissed and fondled each other. She performed an act of fellatio, and they unsuccessfully attempted sexual intercourse. In October, L.K. brought D.T.S., Jr., to her parents' home while they were away on vacation. L.K. and D.T.S., Jr., twice engaged in sexual intercourse that afternoon. Following their discovery of these incidents, D.T.S., Sr., and E.A.S., along with their son, brought a suit seeking money damages against L.K. State Farm brought an action for declaratory judgment to determine if L.K.'s homeowners policy covered any liability which L.K. might incur from these incidents.

L.K.'s homeowners policy contained the following pertinent language:

COVERAGE L—PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an *occurrence*, we will:

1. pay up to our limit of liability for the damages ...; and

2. provide a defense ...

The policy included a section of definitions. The policy defined "occurrence" as an accident. Specifically, it stated:

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage

The policy excluded coverage for damage which the insured "intended or expected" and for damages resulting from the insured's "willful and malicious acts."

In its pleadings, State Farm argued any harm to D.T.S., Jr., was not covered under the homeowners policy because such harm was not a result of an accident and did not constitute bodily injury. State Farm also

asserted that the policy excluded liability arising from these incidents because any injury was intended or expected. Finally, State Farm maintained that harm to D.T.S., Jr., resulted from L.K.'s willful and malicious actions.

At trial, evidence was adduced from several different psychiatrists and psychologists. L.K. submitted evidence from four experts. Although they disagreed on the exact diagnosis, they all agreed L.K. suffered from a psychological disorder, could not control her actions, and did not intend or expect to harm D.T.S., Jr. State Farm's expert, Dr. Wayne Stillings, testified that L.K. did not suffer from a psychological disorder. He believed L.K. was capable but unwilling to control her behavior. He further testified that L.K. realized harm to D.T.S., Jr., could be expected to result from her relationship with him.

The trial court ruled that the defendants failed to prove harm to D.T.S., Jr., fell within the policy's coverage. The defendants did not establish that D.T.S., Jr.'s damages resulted from an accident. The defendants did not show that D.T.S., Jr.'s injuries included bodily injury. The trial court also held L.K.'s intent to injure D.T.S., Jr., was inferred as a matter of law because she engaged in sexual relations with a minor. The trial court found that the law would infer this intent regardless of L.K.'s subjective intent or mental incapacity. Therefore, the policy specifically excluded coverage for this incident.

■ Defendants, the parties seeking to establish coverage under the insurance policy, have the burden of proving that the claim is within the coverage afforded by the policy. *Truck Insurance Exchange v. Heman*, 800 S.W.2d 2, 3–4 (Mo.App.1990). The burden of proving coverage remains on those who are seeking coverage even though they are denominated as defendants in a declaratory judgment action. *Auto–Owners Insurance Company v. McGaugh*, 617 S.W.2d 436, 444 (Mo.App.1981). On the other hand, an insurance company seeking to avoid coverage by reason of a policy exclusion has the burden of proving the applicability of the exclusion. *Truck Insurance Exchange v. Heman*, 800 S.W.2d at 4. The trial court found that

defendants had failed to sustain their burden of proving coverage and that State Farm had proved the applicability of the exclusion. We agree.

■ Specifically, the trial court found that defendants failed to prove that D.T.S., Jr., sustained any bodily injury caused by accident. D.T.S., Jr., "clearly and unequivocally" denied that he had sustained any bodily injury and no evidence to the contrary was introduced. Whether the policy language providing coverage for "bodily injury", which is defined in the policy as "bodily harm, sickness, or disease", could be contorted to include the psychological and emotional harm inevitably inflicted upon a twelve-year old boy as a result of the protracted sexual experiences to which he was subjected by his thirty-nine year old school teacher need not be decided in this case. Rather, the dispositive issue is the failure of defendants to prove that whatever harm may have been sustained was the result of an accident.

■ In order to establish coverage under the policy, defendants had the burden of proving that bodily injury resulted from an occurrence. "Occurrence" is defined as an accident. This burden could be satisfied by proof that L.K. did not consciously or deliberately intend to act as she did or that she did not intend to inflict harm upon D.T.S., Jr. *White v. Smith*, 440 S.W.2d 497, 507 (Mo. App.1969). Conversely, in order to sustain its burden of proof regarding the applicability of the policy exclusion of damages which the insured "intended or expected", State Farm was required to prove both that L.K. acted intentionally and that she intended or expected injury to result. *American Family Mutual Insurance Company v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. banc 1991); *American Family Mutual Insurance Company v. Lacy*, 825 S.W.2d 306, 314 (Mo.App.1991). This latter element does not require proof that the actor desired the particular result. It is sufficient that the consequences were substantially certain to follow from what the actor intentionally did. *Lacy*, at 315.

Although defendants produced psychiatric and psychological evidence that L.K.'s actions were not voluntary, the trial court was

free to reject this testimony. This was especially true in view of the inconsistent and, in some instances, contradictory testimony of defendants' experts. The trial court found L.K. was aware of the nature, quality, and wrongfulness of her acts and that her ability to control her conduct was demonstrated by planning and carrying out secret rendezvous with the boy. The testimony of State Farm's expert that L.K. knew what she was doing and knew it was wrong, that she was capable of controlling her behavior but was unwilling to do so even though she realized that D.T.S., Jr., would be harmed, amply supports the trial court's conclusion. Additional support is found from the note written by L.K. after her arrest. In this note, she stated she knew "[i]t was the wrong way to feel. I should have stopped the relationship then, following the rules, but this time I thought I could get around it. I was tired of doing the right thing for everybody else, I wanted something for me; right or wrong."

Thus, although the evidence is conflicting, there is substantial evidence to support the judgment of the trial court. We defer to the trial judge's superior ability to determine the credibility of the witnesses and the weight to be given to their testimony. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991).

■ Defendants argue strenuously that the trial court erred in inferring as a matter of law an intent to harm from the very nature of the act of sexual abuse of a child and in holding that L.K.'s subjective intent and her mental capacity were irrelevant.

In *Mid–Century Insurance Company v. L.D.G.*, 835 S.W.2d 436 (Mo.App.1992), the Honorable Forest W. Hanna noted in a concurring opinion that although Missouri has not addressed the problem of an insured's intention in the context of sexual abuse of a minor, the states which have done so have almost unanimously concluded that harm was intended as a matter of law and the insured's subjective intent is irrelevant. *Id.* at 439. Recently, the United States Court of Appeals for the Eighth Circuit predicted Missouri, when presented with the issue, would adopt the standard by which intent to harm is inferred from the nature of the act of sexual

molestation or abuse of a minor. *B.B. v. Continental Casualty Co.*, 8 F.3d 1288, 1294 (8th Cir.1993). The court noted that this inferred-intent standard in cases of sexual molestation was a unanimous rule in the thirty-four states which have considered the issue. *Id.* Many of these states, like Missouri, look to a subjective intent to cause harm on the part of the insured before applying the "intended or expected" exclusion in general liability insurance cases, but hold that sexual abuse of a minor is an exception to this general rule. *Id.* at 1293.

Although the decisions of the Eighth Circuit Court of Appeals are not binding upon us, we find the reasoning of *B.B.*, and that of the cases cited therein, persuasive. The rationale underlying the inferred-intent standard is based on the inherently harmful nature of child molestation. *Wiley v. State Farm Fire & Casualty Company*, 995 F.2d 457, 464 (3rd Circuit 1993). "[T]o do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm." *AllState Insurance Company v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365, 369 (1992). "The act is the harm. There cannot be one without the other. Thus, the intent to molest is, by itself, the same thing as intent to harm." *J.C. Penney Casualty Company v. M.K.*, 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689, 695 (1991).

Public policy considerations also lead to the conclusion that in cases of child sexual abuse the inferred-intent to harm standard is preferable to the subjective intent test. "The [inferred-intent] approach ... stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm." *Whitt v. Deleu*, 707 F.Supp. 1011, 1016 (W.D.Wis.1989). Policy holders would be outraged at the suggestion their premiums for homeowners insurance were being used to indemnify child molesters.

As noted above, the testimony of Dr. Stillings and L.K.'s own handwritten note supply ample support for the trial court's conclusion that State Farm had sustained its burden of

proving the applicability of the "intended or expected" exclusion. Moreover, we agree with the trial court's conclusion of law that notwithstanding L.K.'s protestation of subjective intent not to harm D.T.S., Jr. by her sexual manipulations, an intent to harm is inferred as a matter of law from such misconduct.

For the reasons set forth above, the judgment of the trial court is affirmed.

CRANE and CRAHAN, JJ., concur.