**STATE FARM FIRE & CASUALTY CO., Respondent,**

v.

**Jacqueline Sue CALEY, et al., Appellant.**

**No. WD 52066.**

Missouri Court of Appeals,
Western District.

Jan. 7, 1997.

Michael W. Hanna, Raytown, for appellant.

Dale L. Beckerman, Mimi E. Doherty, Deacy & Deacy, Kansas City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

State Farm Fire & Casualty Company brought a declaratory judgment action to determine whether it is obligated to defend Moyne Thomas, its insured under a homeowner's policy, in a suit brought by Jacqueline Caley. The trial court granted summary judgment to State Farm, finding that Mr. Thomas' actions were excluded from coverage because of their "willful and malicious" nature. Ms. Caley contends that Mr. Thomas did not intend to harm her and, therefore, his actions do not come within the policy exclusions for bodily injury which is "expected or intended" by the insured or for bodily injury caused by the insured's "willful and malicious" acts. Because we conclude that Mr. Thomas' actions come within the "expected or intended" policy exclusion, we affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Ms. Caley is Mr. Thomas' 36–year–old step-granddaughter. She filed suit against her step-grandfather alleging that he inflicted emotional distress by touching her private areas without consent and by directing sexual comments at her. She alleged that the emotional distress resulted from incidents that took place between March 1988 and September 1990. On one occasion, her step-grandfather pushed her up against a kitchen counter and forced his hands into her pants in the area of her vagina. On several occasions, he placed his hands on her breasts and buttocks.

Ms. Caley also alleged numerous incidents in which her stepgrandfather made sexually suggestive comments to her. For example, he offered to wash her back while she showered, he asked whether he could try out her waterbed with her, and he asked why she would not let him make her "feel good" like he used to when she was little. An explana-

tion for the latter comment can be found in her deposition testimony that he had sodomized her, molested her, and otherwise sexually abused her since she was four years old. The physical abuse stopped when she reached the age of 12 or 13. She testified that at that point the abuse became mostly "mental"; it apparently involved conduct similar to the conduct of which she now complains and which occurred after she reached adulthood.

At some point Ms. Caley began receiving psychiatric treatment. During treatment she learned that her step-grandfather's actions had caused her psychological damage and emotional distress. She then filed suit against her step-grandfather. Ms. Caley settled her claim against him for $30,000. However, as permitted by Section 537.065, RSMo 1994, the settlement agreement preserved Ms. Caley's right to satisfy a judgment against her step-grandfather from his homeowner's insurer, State Farm. Her step-grandfather then defaulted in the underlying action and she made a claim against State Farm for coverage.

 State Farm denied coverage and brought this declaratory judgment action against both Mr. Thomas and Ms. Caley to determine whether it has a duty under the policy to defend and indemnify Mr. Thomas for the acts occurring during the policy period. As the party claiming coverage under the policy, Ms. Caley has the burden of proving that the claim was within the coverage of the policy. *M.A.B. v. Nicely*, 911 S.W.2d 313, 315 (Mo.App.1995); *State Farm Fire & Casualty Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo.App.1993). The burden of proving coverage remains on her even though State Farm brought the declaratory judgment action. *D.T.S.*, 867 S.W.2d at 644.

State Farm moved alternatively for judgment on the pleadings or for summary judgment, contending that either no coverage is provided or an exclusion from coverage applies. In support, it argued that the policy does not cover the actions of Ms. Caley's step-grandfather because her injuries were not caused by an "occurrence" as defined by the policy. The coverage provision of the policy states:

If a claim is made or a suit is brought against an insured for damages because of *bodily injury* or property damage to which this coverage applies, caused by an *occurrence*, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense....

(emphasis added). The policy defines an "occurrence" as:

an *accident*, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

(emphasis added).

As is common to homeowner's insurance policies, the policy also contains specific exclusions from coverage. The exclusions in question provide as follows:

1. Coverage L and Coverage M do not apply to:

 a. bodily injury or property damage:

 (1) which is either *expected or intended by an insured;* or

 (2) to any person or property which is the result of *willful and malicious acts of an insured;* ...

(emphasis added). State Farm also argued that, even if coverage is provided, both exclusions apply because Mr. Thomas "expected or intended" to injure his step-granddaughter and her injuries resulted from his "willful and malicious" acts. As the insurer, State Farm has the burden of proving that an exclusion applies. *M.A.B.*, 911 S.W.2d at 315; *D.T.S.*, 867 S.W.2d at 644.

Ms. Caley, joined by Mr. Thomas, filed a cross-motion for summary judgment. She argued that not only is there insufficient evidence for a reasonable factfinder to conclude that her step-grandfather intended to injure her, but that the undisputed evidence shows that he intended to give his granddaughter bodily pleasure by his actions.

The circuit court granted summary judgment in favor of State Farm on two grounds. First, the court believed that because Mr. Thomas' conduct was intentional rather than accidental, it did not constitute an "occurrence" as required by the coverage provisions of the policy. Second, the court believed that such intentional unwanted sexual contact fell within the exclusion for "willful and malicious" acts.

The court rejected State Farm's alternative argument that Mr. Thomas "expected or intended" to injure his step-granddaughter, reasoning that the record did not show that he actually had the subjective intent to harm her. The judge believed that such subjective intent was required before it could find the exclusion for "expected or intended" bodily injury applied. This appeal by Ms. Caley followed.

## II. *STANDARD OF REVIEW*

Summary judgment is appropriate when the pleadings, discovery, and affidavits reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo.banc 1993). We review the grant of summary judgment in an essentially *de novo* manner. *Id.* at 376. We review the record in the light most favorable to the party against whom summary judgment was entered, according the party the benefit of all reasonable inferences. *Id.* at 376. If the party bearing the burden of proof cannot establish an element necessary to carry its burden, then entry of summary judgment against it is proper. *Id.* at 381.

## III. *THE "EXPECTED OR INTENDED" EXCLUSION TO COVERAGE APPLIES*

■ Ms. Caley argues on appeal that the trial court erred in holding that the exclusion from coverage for "willful and malicious" conduct applies. She suggests that the trial court correctly held that the exclusion for "expected or intended" injury did not apply because a jury could find that her step-grandfather did not subjectively intend to

harm her when he forced unwanted sexual contact upon her, and that such subjective intent to harm is required by the Missouri Supreme Court's decision in *American Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369 (Mo. banc 1991). She then asserts that if her step-grandfather's actions were not even expected or intended, they certainly could not be willful and malicious. She thus urges us to affirm the trial court's finding that the expected or intended exclusion is not applicable, and to then hold that, since it does not apply, neither can the exclusion for willful and malicious acts.

We disagree with Ms. Caley's basic premise that *Pacchetti* requires us to hold that her step-grandfather's actions do not come within the "expected or intended" exclusion. To the contrary, we find that *Pacchetti* and its progeny support the application of the exclusion where, as here, her step-grandfather clearly intended his acts, and his acts admittedly constituted both unwanted and unconsented to sexual contact. Such contact—amounting at least to the tort of battery, if not also criminal assault (without even considering the acts that occurred before she reached the age of majority)—constituted at least some harm. Ms. Caley's step-grandfather cannot avoid the consequences of such harm simply by claiming that he did not know that his acts would cause her emotional distress, but rather believed in some perverse way that she would like them and gain some pleasure from being touched by him. To the contrary, numerous cases have recognized that he is held to have intended the natural and probable consequences of his acts.

We begin our analysis by examining *Pacchetti*, in which the Supreme Court had before it the question whether an exclusion for harm "expected or intended" by the insured applied. It affirmed the trial court's finding that an insured who injected a boy with a lethal dose of cocaine may not have "expected or intended" to harm the boy. It reasoned that whether the insured expected or intended injury is essentially a question of fact, and deferred to the trial court's findings. *Id.* at 371. *Pacchetti* cautioned insurers seeking relief for expected or intended acts to show "not only that the insured in-

tended the acts causing the injury, but that injury was intended or expected from these acts." *Id.*

Soon after *Pacchetti,* this Court considered a similar exclusionary clause in *Easley v. American Family Mut. Ins. Co.,* 847 S.W.2d 811 (Mo.App.1992). *Easley* involved the question whether a mobile home owner's policy covered her son's actions. Her son had injured another boy by intentionally striking him. While her son had intended only the battery, as a result of the blow, the other boy fell through a window and received very serious injuries. The trial court denied summary judgment to the insurer, believing that under *Pacchetti* the "expected or intended" exclusion did not apply because the son said he did not subjectively intend to cause such serious injuries.

We disagreed, based both on our reading of *Pacchetti* and on public policy. We read *Pacchetti:*

> as instructing that an insurer can escape liability for intentional acts when it establishes not only that the insured acted intentionally, but that the insured intended his acts to injure—not benefit—the victim. The insurer must establish that the insured acted volitionally and with a motive to harm or injure. The *Pacchetti* court was not requiring a showing that the insured intended the specific injury which resulted.

*Easley,* 847 S.W.2d at 812–13.

Next, we noted that public policy supports the exclusion of coverage for injuries which were "expected or intended" by the insured:

> Indeed, Missouri courts have consistently held that an insured's intentional infliction of damage cannot be covered by liability insurance. Permitting an insured to insure himself against his wanton, reckless or willful acts would enable him to insure himself from bearing the consequences of his intentional acts and would, therefore, be contrary to public policy.

*Easley,* 847 S.W.2d at 812.

In *State Farm Fire & Casualty Co. v. D.T.S.,* 867 S.W.2d 642 (Mo.App.1993), the Eastern District of this court engaged in a similar analysis. It concluded that a home-owner's policy which provided coverage for injuries which were not "intended or expected" by the insured did not cover potential liability resulting from a teacher's sexual relations with a minor student. In so doing, it noted that *Pacchetti* does not require insurers to provide coverage unless the insured specifically intended the harm that resulted from his actions. Rather, it held that coverage may be denied if harm was substantially certain to follow from the insured's intentional act:

> ... State Farm was required to prove both that [the insured] acted intentionally and that she intended or expected injury to result. *American Family Mutual Insurance Company v. Pacchetti,* 808 S.W.2d 369, 371 (Mo. banc 1991); *American Family Mutual Insurance Company v. Lacy,* 825 S.W.2d 306, 314 (Mo.App.1991). *This latter element does not require proof that the actor desired the particular result. It is sufficient that the consequences were substantially certain to follow from what the actor intentionally did. Lacy,* at 315.

*D.T.S.,* 867 S.W.2d at 644 (emphasis added).

Recently, we took a similar approach in *Metropolitan Property and Casualty Ins. Co. v. Ham,* 930 S.W.2d 5 (Mo.App.1996). In *Ham,* a 14–year old girl set fire to her juvenile home in an attempt to create a diversion which would allow her to escape without detection. Unfortunately, the resulting blaze burned down the entire home. We rejected the girl's argument that the "expected or intended" exclusion did not apply because she did not intend to destroy the entire home. We reaffirmed the principle set out in *Easley* that an insurer is not liable for an insured's conduct when the insured acted volitionally and with an intent to injure, notwithstanding the fact that the insured intended only a less serious injury. *Id.* at 7. We also reaffirmed the principal set out in *D.T.S.* that "[w]hen an intentional act results in injuries which are the natural and probable consequence of the act, the injuries as well as the act are intentional." *Id.* (quoting *Truck Ins. Exchange v. Pickering,* 642 S.W.2d 113, 116 (Mo.App.1982)).

We find the analysis in the above cases applicable here. In so holding, we reject Ms.

Caley's additional argument that even though her step-grandfather's conduct was intentional, it simply constituted negligent and not intentional infliction of emotional distress because he perversely thought it would bring her pleasure. As a result, she argues, coverage should be provided because the emotional distress she suffered as a result of her step-grandfather's conduct was not expected or intended.

A similar argument was recently rejected by the Missouri Supreme Court in *K.G. v. R.T.R.,* 918 S.W.2d 795, 800 (Mo. banc 1996). In that case, it was claimed that a father's intentional sexual touching of his daughter constituted only negligent infliction of emotional distress, not intentional infliction of emotional distress, and hence the statute of limitations applicable to negligence actions should apply. The Court rejected this argument, noting that even if the father did not subjectively intend to cause emotional distress, it was alleged that he engaged in specific sexual contact with his daughter and that "these allegations contradict any possibility that the defendant's conduct was mere negligence." *Id.*

In *Ham,* we similarly rejected an argument that the defendant's conduct in setting the fire should be considered negligent rather than intentional conduct since it was only due to her negligence that the small fire she intentionally set caused so much damage. We said that her conduct in setting the fire could only be considered intentional, and the fact that she did not intend the extent of the harm was irrelevant to coverage.[1]

Here, as in *K.G.* and *Ham,* we find that the conduct which caused the emotional distress was intentional, not negligent, for Mr. Thomas intended to engage in sexual contact with Ms. Caley without her consent. Clear-

ly, Mr. Thomas' alleged conduct was part of a course of conduct toward her that was a continuation of his abuse of her as a child. This abuse was serious enough to have constituted at least a battery. The resulting emotional distress to Ms. Caley was substantially certain to follow from his intentional acts. It is thus irrelevant whether he specifically subjectively intended the emotional distress that he caused her, or whether he instead had a perverted belief that his step-granddaughter would "like" his sexual touchings; he is held to have intended the natural and probable consequences of his acts. Those acts were sufficiently certain to result in emotional distress to his step-granddaughter. Because he intended some harm, the mere fact that more or different harm resulted is irrelevant to the issue of coverage.

For these reasons, we find that the harm was "expected or intended" on the part of the insured as those terms are used in State Farm's policy exclusion, and hence that the trial court properly granted summary judgment to State Farm.[2] The judgment of the trial court is affirmed.

All concur.

---

**1.** *Cf. Altena v. United Fire & Casualty Co.,* 422 N.W.2d 485 (Iowa 1988) (inferring intent to do the act and cause injury from the criminal nature of sexual assault, the reasonable foreseeability of harm, and public policy); *Western Nat'l Assurance Co. v. Hecker,* 43 Wash.App. 816, 719 P.2d 954 (1986) (inferring intent to harm in a case of "negligent assault and battery" from the character of forcible anal intercourse); *Continental Ins. Co. v. McDaniel,* 160 Ariz. 183, 772 P.2d 6 (App. 1988) (inferring intent to harm from the nature of unwanted sexual contact and harassment, de-

spite the insured's testimony that he only intended to provide pleasure and satisfaction).

**2.** Ms. Caley also contends on appeal that her step-grandfather's lack of a subjective intent to cause the specific harm that resulted precluded the trial court from finding that his acts were not an "occurrence" and that his acts were "willful and malicious." Because we find that Mr. Thomas' acts are excluded from coverage under the "expected or intended" exclusionary clause, we need not reach those issues.