Stanley BRAND, M.D., and Bradley L. Freilich, M.D., Appellants,

v.

KANSAS CITY GASTROENTEROLOGY & HEPATOLOGY, LLC, Appellant,

and

Travelers Indemnity Company of America, Respondent.

Nos. WD 75901, WD 75902.

Missouri Court of Appeals, Western District.

Sept. 17, 2013.

Motion for Rehearing and/or Transfer to the Supreme Court Denied Oct. 29, 2013.

Application for Transfer Denied Dec. 24, 2013.

Kirk R. Presley, Kansas City, MO, for appellants Brand and Freilich.

Arthur A. Benson II, Kansas City, MO, for appellant Kansas City Gastroenterology & Hepatology, LLC.

Wm. Clayton Crawford and Abbigale A. Gentle, Kansas City, MO, for respondent.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, and CYNTHIA L. MARTIN and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

Drs. Stanley Brand and Bradley Freilich, along with Dr. Freilich's practice, Kansas City Gastroenterology & Hepatology, LLC (KCGH), appeal the grant of summary judgment in favor of Travelers Indemnity Company of America (Travelers) on a collection action, filed pursuant to section 379.200 [1] by Drs. Brand and Freilich and against KCGH and Travelers. The collection action sought reimbursement, under an insurance policy issued by Travelers to Dr. Freilich and KCGH, for damages awarded pursuant to a judgment obtained by Dr. Brand against Dr. Freilich and KCGH. The trial court found that Travelers had no duty to defend Dr. Freilich or KCGH under their liability policy against Dr. Brand's tort suit, and, therefore, Travelers also had no duty to indemnify either Dr. Freilich or KCGH on the resulting monetary judgment. Finding no error of law, we affirm.

## Factual Background [2]

Dr. Brand is a medical doctor, specializing in gastroenterology and liver disease. Dr. Freilich is also a medical doctor, specializing in gastroenterology and hepatology. Dr. Freilich was the sole owner and director of Bradley L. Freilich, M.D., LLC, which later became KCGH.

In July 2003, Dr. Freilich approached Dr. Brand about joining KCGH. Dr. Brand, who had a heart condition and previously suffered a heart attack, informed Dr. Freilich of both his heart condition and the fact that he was receiving time-consuming and expensive blood-cleansing treatments. As a condition of his employment, Dr. Brand requested and received assurances that he would be eligible to participate in KCGH's group health insurance plan, including coverage for his treatments. Dr. Brand subsequently began his employment with KCGH on September 1, 2003.

On February 8, 2006, Dr. Freilich presented Dr. Brand with an ultimatum: either he sign a proposed independent contractor agreement or leave KCGH. The proposed independent contractor agreement contained most of the same control provisions as Dr. Brand's original employment contract, but the terms of the proposed independent contractor agreement precluded Dr. Brand from participating in KCGH's benefits, including its group health insurance. Dr. Brand rejected the proposed independent contractor arrangement, and, thereafter, on September 14, 2006, Dr. Freilich sent Dr. Brand a letter, terminating his employment.

Following the termination, Dr. Brand filed a timely charge of discrimination with the Missouri Commission on Human Rights and, following an investigation, received notice of his right to sue. On July

1. All statutory references are to Missouri Revised Statutes 2000, as updated through the 2012 Cumulative Supplement, unless otherwise noted.

2. A large portion of the facts relating to the underlying case are taken from our opinion in *Brand v. Kansas City Gastroenterology & Hepatology LLC*, Nos. WD71061, WD71078, 2011 WL 135010 (Mo.App.W.D. Jan.18, 2011), without further attribution.

26, 2007, Dr. Brand filed a six-count petition for damages in Jackson County Circuit Court against Dr. Freilich and KCGH. The petition asserted claims for disability discrimination (Count I), wrongful discharge (Count II), breach of the implied covenant of good faith and fair dealing (Count III), wrongful failure to renew contract (Count IV), civil conspiracy (Count V), and negligence per se (Count VI). Each count sought both compensatory and punitive damages.

At the time Dr. Brand filed his petition, Dr. Freilich and KCGH carried a Commercial General Liability (CGL) insurance policy provided by Travelers.[3] The policy contained an Employee Benefits Liability Coverage provision (EBL provision) with the following language:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error, or omission of the insured, or of any other person for whose acts the insured is legally liable. The negligent act, error or omission must be committed in the "administration" of your "employee benefit program".... We will have the right and duty to defend any "suit" seeking those damages.

The policy defined "administration" to include "[e]ffecting or terminating any employee's participation in a plan included in the 'employee benefit program.'" And "employee benefit program" was defined to include "group accident or health insurance."

After Dr. Brand filed his lawsuit in 2007, Dr. Freilich and his counsel contacted Travelers and requested coverage. Travelers reviewed the allegations in Dr. Brand's lawsuit, compared those allegations to the CGL policy, and determined that there was no coverage under the CGL policy for Dr. Brand's claims, because (among other reasons) they did not fall within the coverage provided under the EBL provision in that the allegations did not allege a "negligent act, error, or omission" and did not result from the "administration" of Dr. Freilich's "employee benefit program." Travelers requested that if Dr. Freilich was "aware of any facts or theories that would support a duty to reimburse you, please contact us so that we may consider that information." Dr. Freilich's counsel responded to Travelers that "one of the claims in this case is specifically pleaded as a 'negligence' claim and, further, the basis for the claimant's claims in this case is his allegation that he should not have been terminated from participation in the insured's health insurance plan." Travelers relied upon its review of this information that, "it does not appear that the act of terminating an employee would constitute a 'negligent act, error or omission' as set forth in the insuring agreement of the EBL coverage" and again declined to provide defense or indemnity for Dr. Brand's lawsuit "as it is presently stated." Before the jury trial, Dr. Brand's allegations relating to Dr. Freilich's allegedly intentional misconduct were not amended to substitute allegations of inadvertence or mistake and Dr. Freilich did not provide any further information to Travelers that his ultimatum to Dr. Brand was the product of anything other than Dr. Freilich's intentional conduct.

The case proceeded to a jury trial. During the trial, Dr. Brand voluntarily dis-

---

**3.** Though Travelers provided coverage before the time Dr. Brand's petition was filed, the policy provision invoked was a "claims made" provision, and as such, Travelers agreed that the applicable policy period was the time in which the petition was filed. The policy provided that it covered negligent acts, errors, or omissions that occurred any time after February 26, 2002.

missed Counts IV (wrongful failure to renew contract) and V (civil conspiracy). At the close of Dr. Brand's evidence, Dr. Freilich and KCGH moved for a directed verdict on all of the remaining claims and the request for punitive damages. The trial court denied the motion regarding the substantive claims, but granted a directed verdict on the issue of punitive damages as to each of the remaining counts. Dr. Freilich and KCGH filed a second motion for directed verdict at the close of all of the evidence. The trial court granted a directed verdict as to Count III (breach of the implied covenant of good faith and fair dealing), but denied the motion as to the remaining counts, leaving only the claims for disability discrimination, wrongful discharge, and negligence per se.

The jury rejected the claim of disability discrimination (Count I) but found in favor of Dr. Brand on his claims of wrongful discharge (Count II) and negligence per se (Count VI). The jury awarded damages in the amount of $406,074 for wrongful discharge and $300,000 for negligence per se. Dr. Brand filed a motion asking the trial court to enter a judgment of $706,074, the sum of the two verdicts, and on March 5, 2009, the trial court entered judgment in that amount.

On March 13, 2009, Dr. Freilich and KCGH filed a motion for judgment notwithstanding the verdict (JNOV), and Dr. Brand filed his motion for a new trial on the disability discrimination claim and the request for punitive damages. The trial court denied Dr. Brand's motions, but granted Dr. Freilich and KCGH's request for remittitur on the negligence per se claim, reducing the verdict from $300,000 to $24,672. The trial court then entered a final judgment, awarding damages to Dr. Brand in the amount of $430,746.

Both parties appealed the judgment to this Court. *Brand v. Kansas City Gastroenterology & Hepatology, LLC*, Nos. WD71061, WD71078, 2011 WL 135010, *2 (Mo.App.W.D. Jan. 18, 2011). Dr. Brand challenged: (1) the trial court's order of remittitur; (2) the trial court's instructions regarding his disability discrimination claim; and (3) the trial court's decision to grant a directed verdict on the issue of punitive damages. *Id.* Dr. Freilich and KCGH challenged: (1) the trial court's denial of their motion for directed verdict on the wrongful discharge claim; (2) the trial court's denial of their motion for directed verdict on the negligence per se claim; and (3) the trial court's judgment for the sum of the jury's two damage awards. *Id.*

On appeal, this Court affirmed the verdict on wrongful discharge, reversed the verdict on negligence per se due to the lack of a requisite statutory violation,[4] and remanded for a new trial on the issue of punitive damages for wrongful discharge. *Id.* at *3, *5, *9. Following issuance of this Court's opinion, Dr. Freilich and KCGH filed an application for transfer with the Missouri Supreme Court. While the transfer application was pending, Dr. Brand entered into a settlement agreement with Dr. Freilich and KCGH, pur-

---

4. The statute forming the basis for the negligence per se claim was section 376.421, "which prohibits, among other things, the delivery of a group health insurance policy in the State of Missouri unless all employees of the employer are eligible for insurance under the policy." *Brand*, 2011 WL 135010 at *3. This Court determined that the evidence did not support the jury's verdict finding negligence per se because the evidence demonstrated that Dr. Brand participated in KCGH's group health plan the entire time he was employed and he never signed the independent contractor agreement that would have eliminated his coverage. *Id.* at *5. Thus, a violation of section 376.421 was never culminated.

portedly pursuant to section 537.065, for the purpose of settling "all claims" and "nullifying the previous judgment entered . . . and any appellate ruling thereon."

Pursuant to the settlement agreement, Dr. Freilich and KCGH agreed to pay $365,000 to Dr. Brand's attorneys for Dr. Brand's discrimination claim and $65,000 to Dr. Brand "for damages sustained as a result of Defendant KCG[H] and/or its agent's negligent administration of an employee benefit plan." The parties further agreed to either dismiss the pending suit without prejudice or to:

> transfer in the Supreme Court for the sole purpose of that Court remanding the Lawsuit to the trial court for completion of this Settlement Agreement, with each party to bear its own costs; and/or for refiling or remand of the original claim, and for Plaintiff and Defendants to enter into a Judgment . . . whereby Defendant KCG[H] will consent to Judgment against it for $300,000, on Count VI only, Plaintiff's negligence per se claim for Defendant KCG[H]'s negligent administration of an employee benefit plan, all other claims in the Lawsuit being dismissed with prejudice with each party to bear its own costs.

The parties further agreed to refrain from both filing any post-trial motions following entry of the judgment and appealing the judgment. The parties then agreed to take action against Travelers based upon its allegedly wrongful refusal to both defend Dr. Freilich and KCGH and provide coverage under the policy.

The parties then provided a stipulation to the Missouri Supreme Court indicating that they had agreed to settle on the condition that the pending transfer application was granted and the case remanded to the trial court for further actions "to effect the settlement." The Missouri Supreme Court, in accordance with the stipulation, ordered the case transferred and immediately remanded to the trial court "for approval of the settlement of the parties."

■ On remand, the trial court entered a new judgment reflecting dismissal of all claims in the petition except for Count VI (negligence per se). As to the *negligence per se* claim, the trial court made factual findings that appear to be premised upon a claim of *general negligence*—a claim that does not appear in any pleading before the trial court.[5] The trial court then entered a judgment (underlying judgment) against KCGH only for $300,000 with interest.

Drs. Brand and Freilich then filed a separate lawsuit against KCGH and Travelers on the underlying judgment pursuant to both section 379.200 and a claim of bad faith refusal to defend and indemnify. Travelers moved for summary judgment on the ground that it had no duty to defend because Dr. Brand's lawsuit did not arise out of any negligent act, error, or omission by the insured. The circuit court granted Travelers's motion, finding that the underlying lawsuit was based upon intentional and deliberate, rather than negligent, conduct and, therefore, did not fall within the coverage of the EBL provision.[6] And, as such, Travelers had no duty

---

**5.** General negligence and negligence per se are different theories of relief. *See Vintila v. Drassen,* 52 S.W.3d 28, 38 (Mo.App. S.D. 2001) (refusing to review a claim related to negligence per se when the case below was tried on a theory of general negligence). " 'It is axiomatic that a trial court cannot enter a judgment on a cause of action not pleaded.' "

*Citibank S.D. v. Miller,* 222 S.W.3d 318, 321 (Mo.App.S.D.2007) (quoting *Brock v. Blackwood,* 143 S.W.3d 47, 60 (Mo.App.W.D. 2004)).

**6.** The circuit court also found that Travelers met its burden of demonstrating that Dr. Brand's allegations were "expressly excluded

to defend against the claims in the underlying lawsuit. The circuit court further found that, because it had no duty to defend, Travelers likewise had no duty to indemnify. Drs. Brand and Freilich, along with KCGH, appeal.

### Standard of Review

" 'The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo.*' " *Clark v. Progressive Preferred Ins. Co.,* 390 S.W.3d 208, 211 (Mo.App.W.D.2012) (quoting *Bank of America, N.A. v. Reynolds,* 348 S.W.3d 858, 860 (Mo.App.W.D. 2011)). "In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper." *Id.* Summary judgment is appropriate "if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.*

### Analysis

Appellants raise two points on appeal. First, they argue that the circuit court erred in granting Travelers's motion for summary judgment on the ground that Travelers had no duty to defend. Second, they argue that the circuit court erred in denying their motion for partial summary judgment on the issue of whether Travel-

ers had a duty to indemnify following entry of the underlying judgment that found negligence in the administration of an employee benefit plan. We find the first point dispositive and, therefore, need not address the merits of the second point.

### A. Travelers had no duty to defend a lawsuit premised on intentional acts of the insured.

■■■ An insurer's duty to defend an insured " 'arises whenever there is a potential or possible liability to pay based on the facts *at the outset of the case* and is not depend[e]nt on the probable liability to pay based on the facts ascertained through trial.' " *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo. banc 1999) (emphasis added) (quoting 13 JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE, § 4684 (rev. vol. 1976)). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Id.* "If the complaint . . . alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170–71.

■■■ "An insurer does not have a duty to defend a suit where the petition 'upon its face alleges a state of facts which fail to bring the case within the coverage of the policy.' " *Trainwreck West Inc. v. Burlington Ins. Co.,* 235 S.W.3d 33, 42 (Mo.App. E.D.2007) (citation omitted). " 'The insurer owes no duty of defense where . . . the allegations of claimant's petition and the

from coverage by certain endorsements and exclusions of Travelers'[s] Policy." Specifically, the trial court found coverage precluded by endorsement number CG T4 85 11 88, which precluded coverage for acts of coercion, discrimination, reassignment and wrongful termination. The trial court also found that exclusion "a." of the EBL provision applied because Dr. Brand alleged "loss

arising out of dishonest, fraudulent and malicious acts committed by both Dr. Freilich and KCG[H]." In their briefs, the parties argue about the application of these exclusions, but that is an issue we need not resolve in light of our determination that Appellants failed to prove that Dr. Brand's allegations fell within the coverage of the EBL provision.

insurance contract demonstrate that coverage does not apply.'" *Id.* (quoting *Benningfield v. Avemco Ins. Co.*, 561 S.W.2d 736, 737 (Mo.App.1978)). Conversely, "'[t]he insurer cannot ignore ... actual facts known to it or which could be known to it or which could be known from reasonable investigation.'" *Id.* (quoting *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 210 (Mo.App.E.D.1995)). "[A]ctual facts are those 'facts which were known, or should have been reasonably apparent *at the commencement of the suit and not the proof made therein or the final result reached.*'" *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. banc 1968) (emphasis added) (quoting *Marshall's U.S. Auto Supply v. Maryland Cas. Co.*, 354 Mo. 455, 189 S.W.2d 529, 531 (1945)).

Here, Appellants argue that the EBL provision provided coverage and triggered Travelers's duty to defend. The EBL provision provided coverage for "negligent acts, errors, or omissions" in the "administration" of an "employee benefit plan." Appellants argue that Dr. Freilich's act of offering Dr. Brand employment without group health insurance coverage constituted a negligent act in the administration of an employee benefit plan. Appellants further argue that the potential for coverage under the EBL provision was readily apparent in Dr. Brand's petition—more specifically, in Count VI alleging negligence per se—and, therefore, Travelers had a duty to defend Dr. Freilich and KCGH against Dr. Brand's petition. We disagree.

■ A petition's mere mention of the word, "negligence," does not trigger a duty to defend where the factual allegations forming the "negligence" claim demonstrate intentional conduct. *See Allen v. Continental W. Ins. Co.*, No. ED99111, 2013 WL 1803476, *6 (Mo.App.E.D. Apr. 30, 2013) (finding that insurer had no duty to defend under liability policy where petition against insured alleged negligence premised upon intentional conduct).

Dr. Brand's petition presented six counts, all of which were premised upon intentional conduct by Dr. Freilich and KCGH. Even Count VI, alleging negligence per se, was premised upon Dr. Freilich's intentional act of attempting to change Dr. Brand's status from employee to independent contractor for the purpose of removing him from the group health insurance plan; Dr. Brand alleged that this intentional act violated section 376.421, "which prohibits, among other things, the delivery of a group health insurance policy in the State of Missouri unless all employees of the employer are eligible for insurance under the policy." *Brand*, 2011 WL 135010 at *3. The petition specifically averred that the conduct underlying the negligence per se claim "was knowingly undertaken with the intention of depriving Plaintiff of his legal rights and otherwise causing injury to Plaintiff, and/or was undertaken with reckless disregard for the consequences to Plaintiff." Under neither scenario (knowingly undertaken or undertaken with reckless disregard) did Dr. Brand allege negligent conduct. And, in fact, in their briefing to this Court, Appellants have admitted that "Dr. Freilich and KCGH intended to exclude Dr. Brand from participation in the group health insurance plan." Thus, at the commencement of Dr. Brand's lawsuit and upon Travelers's request for any other facts, information, or theories that would support coverage under the CGL policy, the *only* information provided by Dr. Freilich was that, at all times, Dr. Freilich's conduct was not the product of inadvertence or mistake, but rather, was the product of his *intentional* conduct—or intentional misconduct as it were.

"Missouri courts have consistently held that an insured's intentional infliction of damage ... cannot be covered by liability insurance." *Easley v. Am. Family Mut. Ins. Co.*, 847 S.W.2d 811, 812 (Mo.App.W.D.1992); *see also Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831, 837 (Mo.App.W.D.1983) (noting that intentional acts are "obviously not covered by [an] errors and omissions policy"). "Permitting an insured to insure himself against his wanton, reckless or willful acts would enable him to insure himself from bearing the consequences of his intentional acts and would, therefore, be contrary to public policy." *Easley*, 847 S.W.2d at 812; *see also James v. Paul*, 49 S.W.3d 678, 687–88 (Mo. banc 2001) (holding that public policy in Missouri bars an individual from insulating himself, through liability insurance, from economic responsibility arising from his own intentional acts). "[A]n insurer is not liable for an insured's conduct when the insured acted volitionally and with an intent to injure...." *State Farm Fire & Cas. Co. v. Caley*, 936 S.W.2d 250, 253 (Mo.App.W.D. 1997). Moreover, intentional conduct cannot later be characterized as negligence merely because the damage resulting was greater than or different from that intended by the insured. *Id.* (citing *Metropolitan Prop. & Cas. Ins. Co. v. Ham*, 930 S.W.2d 5, 6–7 (Mo.App.W.D.1996)).

Despite their admission of intent to exclude Dr. Brand, Appellants nevertheless claim that the actions they took to accomplish their misguided goal "*involved* a 'negligent act o[r] error' ... in effecting or terminating his participation in the group health insurance plan" and were, therefore, covered by the EBL provision. (Emphasis added.) There are two flaws in this argument. First, the EBL provision covers only those damages *caused by* negligent acts, errors, or omissions; it does not cover damages that merely *involve* negligent acts, errors, or omissions. And, the petition claims that Dr. Brand's damages were caused by Dr. Freilich and KCGH's admittedly wrongful act of forcing Dr. Brand to choose between termination and losing health insurance coverage. And, although the language in the independent contractor agreement, rendering Dr. Brand an employee, rather than an independent contractor, may have been *involved* in his harm, it was not the *cause* of it. This is especially evident by the fact that Dr. Brand refused to execute the agreement; thus, the language it contained never had any operable effect. In reality, Dr. Brand's damages were caused by the decision to terminate his employment.

The second flaw in Appellants' argument is that the motivation prompting allegedly negligent conduct is "crucial" to the determination of whether that conduct is covered by an errors or omissions provision. *Katz Drug Co.*, 647 S.W.2d at 837. And here, Appellants have admitted that tendering the independent contractor agreement was motivated by Dr. Freilich's unlawful desire to remove Dr. Brand from group health insurance coverage.

In *Katz*, the insured failed to notify an employee regarding an impending lapse in life insurance coverage absent affirmative action by the employee to extend coverage. *Id.* at 833. Upon learning of the lapse, the insured's spouse contacted the employer, whom she had been advised could reauthorize the life insurance coverage, but the employer refused to do so. *Id.* at 833–34. After the insured passed away, his wife sued the employer for breach of contract to provide group life insurance coverage. *Id.* at 834. The employer maintained a commercial general liability policy containing an EBL provision much like the provision at issue in this case. *Id.* at 836–37. But when the employer tendered the wife's

claim to its insurer, the insurer refused to defend on the ground that the employer's refusal to reauthorize was an intentional act, falling outside the coverage of the errors and omissions clause in the EBL provision. *Id.* A judgment was entered against the employer, and, after satisfying the judgment, the employer brought an action against its insurer seeking damages. *Id.* at 834. The trial court entered judgment in favor of the insurer, finding that, even if the failure to notify the insured was a negligent act, error, or omission within the policy's coverage, the subsequent intentional act of refusal to reauthorize removed the claim from the policy's coverage; the employer appealed. *Id.*

On appeal, this Court rejected the trial court's determination that a subsequent intentional act could relieve an insurer from its duty to defend against potentially negligent acts causing harm. *Id.* at 838. In reaching our holding, we examined the potential preclusive effect of the underlying judgment, wherein the jury determined that the employer failed to provide timely notice before his life insurance coverage lapsed. *Id.* at 837. The employer-insured argued that the jury's finding was tantamount to a finding that the employer committed a negligent act, error, or omission in the administration of its employee benefit program. *Id.* We disagreed, noting that "[t]he jury was not required to determine the *reason* for the failure to notify, and therefore made no finding as to whether it resulted from an honest mistake, an oversight, negligence, an intentional act, or malicious motivation." *Id.* (emphasis added). We indicated that "[s]uch a finding is *crucial* to the question of whether the failure to notify was covered by [the] policy...." *Id.* (emphasis added). We then examined the evidence presented at trial demonstrating that, despite good faith efforts by the employer, the employee never received notice; conse-

quently, we determined that the failure to notify appeared to result from an error of some kind, rather than any intentional conduct, which brought it within the coverage of the EBL provision and placed a duty to defend upon the insurer. *Id.* at 838.

 Here, unlike the failure to notify in *Katz*, we know the reason that Dr. Brand was offered the allegedly faulty independent contractor agreement: Dr. Freilich no longer wished to pay for Dr. Brand's health insurance. The agreement was offered with the intent of depriving Dr. Brand of health insurance coverage, and that is exactly the effect it would have had if Dr. Brand had agreed to it. The concepts of negligence and intentional conduct "are contradictory and mutually exclusive." *Gallatin v. W.E.B. Rests. Corp.*, 764 S.W.2d 104, 105 (Mo.App.W.D.1988). Thus, Dr. Freilich's actions simply cannot be characterized as negligent. And, in the absence of a negligent act, error, or omission, Travelers had no duty to defend.

Point I is denied.

**B. In the absence of a duty to defend, an insurer has no duty to indemnify.**

 In their second point, Appellants argue that, because Travelers wrongfully refused to defend, it is now bound by the underlying judgment, which clearly reflects a claim falling within the coverage of the EBL provision. While we agree that the underlying judgment reflects general negligence factual findings that may fall within the coverage language of the EBL provision, we disagree that Travelers has a duty to indemnify.

 As discussed above, an insurer's duty to defend is examined at the outset of the case, or upon notice of an amended pleading, based upon facts known or reasonably ascertained through a review of

**556**

pleadings and reasonable investigation; the insurer's duty to defend is not dependent on facts ascertained through trial. *See McCormack,* 989 S.W.2d at 170. Here, it was not until a jury verdict on negligence per se was reversed by this Court, a settlement agreement was achieved during the pendency of an application for transfer to the Missouri Supreme Court that resulted in transfer and immediate remand to the trial court, and a resulting judgment from that trial court, that we *for the first time* see any mention of facts that resemble general negligence versus intentional misconduct. Dr. Freilich never provided any factual information to Travelers that apprised Travelers of conduct that could be deemed general negligence causing Dr. Brand's alleged injury. Instead, Dr. Freilich affirmatively provided information to Travelers confirming that his actions were *not* the product of inadvertence or mistake, but rather were the product of intentional conduct. Under these circumstances, Travelers had no duty to defend Dr. Freilich or KCGH against Dr. Brand's lawsuit. And, "[w]here there is no duty to defend, there is no duty to indemnify."[7] *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.,* 71 S.W.3d 232, 236 (Mo.App.W.D. 2002).

Point II is denied.

### Conclusion

The allegations of Dr. Brand's petition were all premised upon intentional conduct engaged in by Dr. Freilich and KCGH. Thus, they did not fall within the coverage of the errors and omissions clause of the EBL provision, and Travelers had no duty to defend. And because Travelers had no duty to defend, it has no duty to indemnify Dr. Freilich and KCGH on the underlying judgment. The trial court's grant of summary judgment in favor of Travelers is affirmed.

CYNTHIA L. MARTIN and GARY D. WITT, Judges, concur.

---

7. Although this general statement of law may not apply universally, it is applicable under the facts of this case, where Travelers never had notice of the general negligence theory presented in the judgment resulting from the settlement. Dr. Freilich and KCGH claim that our prior opinion, reversing the negligence per se verdict and judgment, somehow put Travelers on notice that the case would later be settled on a general negligence theory. We reject this argument. Put simply, Travelers was never notified of the basis for a theory of general negligence. Thus, it had neither a duty to defend nor a duty to indemnify under a general negligence theory.